UNITED STATES v. BOSTON ELEVATED RY. CO. et al.

(Circuit Court, D. Massachusetts. March 10, 1910.)

No. 663.

1. MUNICIPAL CORPORATIONS (§ 690*)—RIGHTS IN STREET—LICENSE—TERMINATION.

Where the owner of a building let to the government for a post office was granted permission by the city to excavate and occupy part of a basement room lying under the sidewalk, the owner's license to continue so to use the street was terminated by a subsequent notice from the mayor to remove everything belonging to him under the sidewalk within the street line which interfered with a street railway company's construction of a subway under authority granted by Acts Mass. 1906, c. 520, authorizing it to locate and construct the subway wherever it might deem best within the limits of the street, subject only to the approval of the railroad commissioners.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1490; Dec. Dig. § 690.*]

2. UNITED STATES (§ 57*)—OCCUPATION OF PREMISES FOR GOVERNMENTAL PURPOSES—EVICTION BY OWNER.

The owner of premises, by virtue of his title, may evict and dispossess officers of the government, though occupying and using the premises by governmental authority and in the performance of governmental functions.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 40; Dec. Dig. § 57.*]

3. POST OFFICE (§ 6*)—"ESTABLISH."

Const. art. 1, § 8, cl. 7, authorizes Congress to establish post offices and post roads, and Rev. St. § 3829 (U. S. Comp. St. 1901, p. 2608), empowers the Postmaster General to establish post offices at all such places on post roads established by law as he may deem expedient. Held, that the government's mere occupation of a rented building on a post road for a post office did not constitute the establishment of a post office in the sense of accomplishing of itself any appropriation or dedication of the site selected to public use, or any interference with existing rights therein.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 6; Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 3, pp. 2460–2473.]

4. EMINENT DOMAIN (§ 47*)—PROPERTY TAKEN FOR PUBLIC USE—CONDEMNATION—FEDERAL USES.

In general, property devoted to one public use may be taken for another public use; the right to take for federal uses being paramount.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 107; Dec. Dig. § 47.*]

5. EMINENT DOMAIN (§ 69*)—CONDEMNATION OF LAND—POST OFFICES—PAYMENT OF COMPENSATION:

The United States cannot obtain a site for a post office by condemnation except on paying just compensation to the owners of the rights extinguished, whether public, semipublic, or private.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 171; Dec. Dig. § 69.*]

6. POST OFFICE (§ 6*)—USE OF PREMISES—EFFECT.

Occupation of rented premises by the post office department for a post office does not of itself give the government any rights in the premises greater than were obtained by the establishment of the post office in them, nor is such fact material of itself in determining the precise nature of the rights obtained.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 6; Dec. Dig. § 6.*]

7. POST OFFICE (§ 6*)—SITE FOR POST OFFICE—RIGHTS OF GOVERNMENT.

Laws Mass. 1906, c. 520, conferring on a street railway company the right to locate and construct its subway anywhere within the limits of a street, took effect by acceptance of the company August 23, 1906. The plans of the company showing the location at the point in question were filed January 28, 1907. These plans were finally approved April 30, 1909, with some alterations, not however affecting the point in question. In June and October, 1908, the owner of abutting property obtained a license from the city to use the space under the sidewalk, which would necessarily be encroached on by the subway when built. On October 7, 1908, the owner rented the premises, including the space under the sidewalk, to the government for a post office. Held, that the United States was chargeable with notice of the railroad's rights in the premises so that it could not maintain a bill to enjoin the railroad from interfering with the space beneath the sidewalk.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 6; Dec. Dig. § 6.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Bill by the United States against the Boston Elevated Railway Company and others. Bill dismissed.

Asa P. French, U. S. Atty.

Gaston, Snow & Saltonstall and Thomas Hunt, for defendants.

DODGE, District Judge. This case has been heard upon the bill and the answers filed by the two defendants. At the hearing an agreed statement of facts was submitted, and evidence was also introduced by the complainant and the defendants respectively. Upon a motion made by the complainant for a preliminary injunction, a restraining order was issued January 25, 1910, which has since remained in force, pending a hearing upon an order to show cause why a temporary injunction should not issue. The hearing upon bill and answers having presented all the questions which would be involved in a hearing under the order to show cause, the restraining order will, if the complainant maintains its bill, become a permanent injunction.

The parties assert conflicting rights in certain premises within the limits of Brattle street in Cambridge, lying below the sidewalk, on the southerly or easterly side of that street. Certain rooms on the ground floor of a building there, fronting on Brattle street, and in connection therewith a basement room in the same building below, are occupied and used by the Cambridge post office, and have been so occupied and used by it for post office purposes since August 25, 1909; the Postmaster General having previously established a post office there on October 7, 1908, as is admitted. The basement room referred to is for the most part within and underneath the building and outside the street limits, but at one end it extends beyond the front line of the building into the limits of Brattle street, underneath the sidewalk, and is lighted in part through sidewalk lights within the street limits. The defendants are engaged in constructing a subway, under authority granted to the defendant railway company by the state of Massachusetts. The subway is to run at this point beneath the surface of Brattle street, but within its limits, and, as planned, it will permanently occupy a part of that space beneath the sidewalk, and within the street limits, into which the basement room referred to extends. Such occupation will reduce the floor area of the room, at present about 1,125 square feet, by about 80 square feet. It will also somewhat interfere with the light which the room now receives through the sidewalk, though the subway is to be, in section, of such a shape that the area of the sidewalk lights will not be reduced. The process of construction will also, while it lasts, inevitably interfere to some extent with the present use of the room by the post office authorities.

The United States as complainant alleges that it is essential to the effective and convenient operation of the postal service that in the exercise of its constitutional duty it should not be prevented from or disturbed in the use of the premises referred to or any part thereof. It contends that any invasion of or interference with those premises by the defendants, after the establishment of a post office in them and while they are being occupied and used for the purposes of the postal service as at present, will be unlawful; and it seeks to have the inva-

sion and interference which ·the defendants propose and threaten by
their intended construction of the subway at this point, in the manner
described, enjoined by the court upon that ground.

No alleged want of jurisdiction in the court to inquire into the law-
fulness of the government's possession has in this case to be consid-
ered. The government has come into court of its own accord to apply
for the protection sought by its bill and is, therefore, undertaking to
prove the lawfulness of the possession which it asks the court to de-
fend.

Brattle street is an ancient public highway and a post road. The
authority given the defendant railway company to build a subway un-
der it is contained in an act passed by the Massachusetts Legislature
which was approved by the Governor, June 23, 1906, and is published
as chapter 520 of the Acts of 1906. It has taken effect by acceptance
as provided in section 32, and has therefore been in effect at least since
August 23, 1906. The defendant Hugh Nawn Contracting Company
is performing the physical work of the construction in virtue of a
contract with the railway company and under its direction and con-
trol. The act referred to, in sections 1 and 4, gives the defendant
company full authority to locate and construct the subway wherever
it may deem best within the limits of Brattle street, subject, however,
to the approval of the Railroad Commissioners.

The defendants contend that their proposed construction of the sub-
way, inasmuch as it has been duly authorized by law and is to be wholly
confined within the limits of Brattle street, will not, even if it encroach
upon. that part of the basement room referred to which lies under
Brattle street, invade or enter upon premises in which the complainant
has any rights as against them, and that it cannot, therefore, be for-
bidden as unlawful by the court.

The United States has no ownership in any portion of the premises
occupied and used by the Cambridge post office as above. It has
never acquired or attempted to acquire them or any part of them,
either by condemnation or purchase. Its occupation and use of them
are, so far as they are supported by any title to them, under and by
virtue of an agreement with Edwin H. Abbot of Cambridge. He, for
the purposes of this decision, there being no suggestion of title in any-
one else, may be assumed to be their owner, although no proof of his
title has been offered. June 30, 1908, Mr. and Mrs. Abbot tendered
to the Post Office Department a written agreement to lease the space
on the ground floor of the building and the basement room, for 10
years, upon terms and conditions stated. By a letter dated October
7, 1908, the department accepted their agreement, subject to the pro-
visions of the form of lease used by the department in such cases, and
notified Mr. Abbot that a lease would be drawn up and sent for exe-
cution when the premises should be reported by a department repre-
sentative as fitted up according to the agreed terms. No actual execu-
tion of any lease has been shown. The agreement and acceptance refer-
red to are Exhibits G and H annexed to the agreed statement of facts.
On August 25, 1909, possession of the premises was given to and taken
by the department, which has ever since retained it.

Mr. Abbot's right to excavate and occupy that part of the basement room lying under the sidewalk rests upon permission granted him by the city of Cambridge, as set forth in orders made by its board of aldermen June 2, June 9, and October 13, 1908. Copies of these are Exhibits C, E, and F annexed to the agreed statement of facts. Under date of August 26, 1909, the mayor of Cambridge, upon a petition by the defendant railway company, and acting in accordance with section 10 of chapter 520, Acts 1906, above referred to, notified Mr. Abbot in writing to remove everything belonging to him under the sidewalk and within Brattle street, which interfered with the construction of the subway as proposed, within 30 days. Exhibit K annexed to the agreed statement of facts is a copy of this notice. The government argues that Mr. Abbot's property under the sidewalk was not of like kind with the kinds of property specifically mentioned in section 10, and that the mayor's notice was inoperative to require its removal. But it seems to me that all property which the company should "deem to interfere" with the construction of the subway, as it did this property, is within the provisions of the section; and that the mayor's notice was an effectual revocation of Mr. Abbot's license to maintain it where it was. His license to occupy that portion of the basement room included in the space described by the notice being thus withdrawn, he was without any rights therein as against the company, from and after the date of the notice.

The defendants concede that the government is to be protected in the occupation not only of any property it may own, but also in the occupation of any property whereof it may be in lawful possession, whether used by it for post office purposes or for any other public purposes whatsoever. But they contend that, before it can claim such protection, the government must prove the lawfulness of its possession, and that mere present occupation and use for public purposes, however lawful in their origin, if without other right or title except such as may result ipso facto from that use, do not establish such lawful possession in the government as against persons otherwise lawfully entitled. They contend that there is nothing in the evidence to show any right or title in the United States to the premises here in question, derived from any source other than Mr. Abbot.

If the government has only Mr. Abbot's rights in the premises, it is without any right to oppose the construction of the subway through so much of them as lie under Brattle street. It claims, however, in virtue of its paramount authority, a right to use the premises and to use every part of them which transcends any right that a mere owner of abutting property could assert. The only facts which it alleges in its bill as establishing the right of the government to the relief asked for are, in substance: The establishment of a post office in the premises by the Postmaster General, the present use of the premises for post office purposes, and the necessity to the operation of the postal service that the government's occupation and use should in no respect be disturbed. And it contends that inasmuch as the Postmaster General has selected the premises and established a post office in them, by virtue of the power and discretion vested in him by law, and this original

occupation of them by the government was lawful, and has since been continued by its officers in the performance of their appointed functions, the government must, for the purposes of this case, now be regarded as in lawful occupation of them and they must be regarded as constituting in every part an instrumentality of the federal government, of which it cannot be lawfully dispossessed, either in whole or in part, so long as its occupation and use of them for post office purposes may continue. As to that part of them lying within the limits of Brattle street, the government further contends that its right to use them must be regarded as expressly authorized by act of Congress and as paramount, because they are within the limits of a post road.

That the owner of premises may, by virtue of his title, evict and dispossess officers of the government, though occupying and using them by government authority and in the performance of governmental functions, the United States is obliged to concede, in view of the decision in U. S. v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171. But it insists that, unless the continued occupancy of its officers becomes a violation of some prior conflicting right secured by the Constitution to those attempting to oust it, its contentions above summarized must prevail.

For the purposes of this decision, it thus becomes necessary to inquire, in the first place, what rights in land the government may acquire merely by the establishment of a post office, followed by occupation and use for necessary post office purposes; and next whether or not any violation of prior conflicting rights secured by the Constitution will be involved in sustaining the claim of the government as against the claim of the defendants.

In the mere fact that the department has established a post office in the premises I am unable to find any strong support for the government's position. Congress has power under the Constitution (article 1, § 8, cl. 7) to "establish post offices and post roads." It has empowered the Postmaster General to "establish post offices at all such places on post roads established by law as he may deem expedient." Rev. St. § 3829 (U. S. Comp. St. 1901, p. 2608). The power to which these provisions refer is power "to designate the places where mail shall be received and delivered." Ware v. U. S., 4 Wall. 617, 632, 18 L. Ed. 389. A place having been so designated, there is a post office over which a postmaster may be appointed, and the post office thereafter continues to exist until it is discontinued. But no reason appears for believing that such establishment accomplishes of itself any appropriation or dedication of the site selected to public uses, or any interference with existing rights therein. It is said in Kohl v. U. S., 91 U. S. 367, 372, 23 L. Ed. 449:

"When the power to establish post offices and create courts within the states was conferred upon the federal government, included in it was authority to obtain sites for such offices and for courthouses, and to obtain them by such means as were known and appropriate. The right of eminent domain was one of these means well known when the Constitution was adopted, and employed to obtain lands for public uses."

Equally well known means of obtaining sites were, of course, purchase from or agreement with the owner. Admitting then that power

to establish offices includes authority to obtain sites, it does not follow that the authority must necessarily be exercised, or that any of the means referred to must necessarily be used, whenever there is an exercise of the power to establish an office, and still less does it follow that establishment is in itself a means. It seems not impossible that a place might be designated and used as a post office without "obtaining" any site at all. The designation and use might be in advance of proceedings to condemn or of negotiations with the owner. Nor does establishing a post office seem to confine it of necessity during its continuance to the particular site first designated. In order to change the site it does not appear that discontinuance and re-establishment are required. It would seem, indeed, that the Cambridge Post Office can hardly have been first "established" in 1908, and that what was really accomplished by the department's acceptance of Mr. Abbot's offer, on October 7th of that year, may have been rather a change of location of an established post office, though it is called an "establishment" in paragraph 1 of the agreed facts. But, however this may be, I think it clear that if the government does exercise its authority to obtain a site when it establishes an office, the exercise must be by the use of one or the other of the means referred to, that the rights acquired must depend wholly upon the means adopted, and, further, that no greater rights can be acquired than would ordinarily be acquired by the use of the same means, merely by reason of the fact that the government has used them in connection with the establishment of a post office.

The subsequent use and occupation for postal purposes are relied on in connection with the establishment, as supporting the right which the government asserts. The character of this occupation and use shows that all the acts of the department officers have been within the scope of their official duties, but this I do not understand to be denied. It can have no force of itself to give the government any rights in the premises greater than were obtained by the establishment of the office in them, nor any weight of itself in determining the precise nature of the rights obtained.

If the government had purchased these premises from the owner, it would have acquired no greater rights in so much of them as lay under Brattle street than it acquired under its agreement with the owner. It does not seem to be disputed that it might have obtained the whole site, whether within or without Brattle street, by using its right of eminent domain. The general principle is that property devoted to one public use may be taken for another public use, and that the right to take for federal uses is paramount. Had the department chosen to adopt this means, it would have extinguished, so far as it was concerned, all other rights in every part of the premises, whether belonging to the city of Cambridge or the defendant railway company. But it could have resorted to this means of obtaining the site only at the cost of making just compensation to the owners of the rights extinguished, whether public, semipublic, or private. See St. Louis v. Telegraph Co., 148 U. S. 92, 100, 101, 13 Sup. Ct. 485, 37 L. Ed. 380. With the principles according to which the amount of such compensation would have been determined we are not now concerned. Instead

of assuming any such burden, the department contented itself with acquiring for a term the owner's rights in the premises by agreement with him. To hold that establishment of a post office and occupation and use of the site so enlarged the rights obtained from the owner as to make them, for so long as he and the department might agree, practically equal to those which might have been obtained by condemnation, would seem to involve the conclusion that the United States might dispense altogether, in many supposable cases, with condemnation proceedings and with just compensation. The same result might be secured at less trouble and expense, whenever the department could agree with the owner, without regard to incumbrances or easements. The controlling reason for the decision in U. S. v. Lee, 106 U. S. 196, 218–221, 1 Sup. Ct. 240, 27 L. Ed. 171, already referred to, was, as appears by the majority opinion, that to allow possession, occupation, and use by the government to prevail of themselves against the owner's rights would be to permit the seizure of property without due process of law, and its devotion to public uses without just compensation, in violation of the fifth amendment.

It is further to be remembered that, because condemnation proceedings are in rem, public notice and hearing are essential to their validity, and the notice must describe the land to be taken. Nothing of the kind being required for the "establishment" of a post office, there was, of course, nothing of the kind in this instance. The boundaries of the site were agreed between Mr. Abbot and the department without opportunity for any assertion of other rights in the land within those boundaries.

That the department may obtain land within the limits of a post road, or rights in such land beyond the right to use it as part of a post road, by means other than those it is obliged to use in the case of land not so situated, I see no reason to believe. If a telegraph company uses such a road under the permission given by Congress in Rev. St. § 5263 (U. S. Comp. St. 1901, p. 3579), it cannot displace private rights without the owner's consent. Pensacola, etc., Co. v. Western Union, etc., Co., 96 U. S. 1, 11, 12, 24 L. Ed. 708.

If it would be in any case possible to allow a greater effect than I have allowed to the "establishment" of this post office on October 7, 1908, I think the facts agreed afford strong ground for holding that the department should be presumed to have had no intention of acquiring by it, in this case, any rights adverse to those on which the railway company relies. On the date referred to, the act of 1906 had been in effect by acceptance for more than two years, as has been stated. The railway company had also had on file with the city engineer for more than fifteen months, or since January 28, 1907, the plan marked "Exhibit B," referred to in paragraph 6 of the agreed facts. This was filed in compliance with section 3 of the act, as a prerequisite to beginning construction. The plan shows, on a small scale it is true, but, as it seems to me, with sufficient distinctness, that the railway company would construct the subway so as to make it occupy about half the width of the sidewalk adjoining these premises and encroach upon them substantially as it now proposes, unless the Railroad Commissioners should alter the plan; as they might, according to section 3. I

think the department must be charged with knowledge on October 7, 1908, that the railway company would occupy that part of the post office site offered by Mr. Abbot, in the absence of any alteration of their plan by the Railroad Commission, and with knowledge that Mr. Abbot had no rights which entitled him to resist such occupation. The power of the state of Massachusetts to authorize such occupation, by virtue of the public rights in Brattle street, is not questioned. See Sears v. Crocker, 184 Mass. 586, 69 N. E. 327, 100 Am. St. Rep. 577. Mr. Abbot's licenses from the city of Cambridge to occupy light areas under the same sidewalk (Exhibits C, E, and F, above referred to) were not obtained until after the railway company's plan had been on file nearly a year. It is true that there was no final approval of any plan by the Railroad Commissioners until April 30, 1909, and that the plan of June 28, 1907, was in some respects altered before that approval. But the plan was not altered at all so far as it affected these premises, nor in their vicinity. Nor does it appear that any change in the construction proposed under the sidewalk adjoining them was ever asked for or suggested by anybody.

In adopting, as the only means to be used for obtaining a site for this post office, the method of acquiring only such rights in it as the owner could transfer, and in doing so with knowledge that the above steps had been taken to devote, by state authority, so much of the site as lay below the sidewalk and within the proposed subway, to its construction, and thus to divest the owner, to that extent, of any possible rights, I think the department must be taken as having knowingly accepted a site subject to be encroached upon as proposed, when the subway construction had progressed far enough to make the encroachment necessary, and therefore as having contented itself with obtaining only such rights in the premises as such encroachment would not disturb. To hold, therefore, that it may now, by virtue of its possession and occupation, obstruct the work of construction to the extent of excluding the defendants from every part of the premises, will be to accord it rights in them never obtained by due process of law.

I am therefore obliged to hold that the United States has not established its right to the relief prayed for in its bill. This result, so far as I can see, in no way conflicts with the undeniable principle that the instrumentalities of the federal government are not to be burdened, controlled, or interfered with by state legislation, nor with the principle that a state statute must be construed, whenever possible, as not intending any such application of its provisions. The question in this case seems to me to be: To what extent has the part of these premises in dispute become a federal instrumentality? The state legislation here in question having been enacted, and the railway company's designation of space below Brattle street to be used for the purpose thereby authorized having been made, as stated, by the submission of its plan, long before the department took any of the steps claimed to have devoted any part of this post office site to federal uses (though not approved until later), I do not see how any proceedings by the department, not effectual to supersede or suspend public rights under state laws, could accomplish that result as to the part in question.

The proceedings taken were not, in my opinion, effectual for such a purpose.

How far that portion of the basement room which the subway construction will render unavailable is really necessary to the work of the post office is a question upon which conflicting evidence was submitted, subject to the objection of the government that the question is immaterial. The result above reached renders it unnecessary to consider the question at all.

The bill is to be dismissed.